KENT MARKUS, Enforcement Director (OH Bar #16005)
ANTHONY ALEXIS (DC Bar #384545)
JEFFREY PAUL EHRLICH (FL Bar #51561)
MANUEL P. ALVAREZ (CA Bar #253874)
LAWRENCE BROWN (TX Bar #24040586)
THOMAS WARD (IL Bar #6291011)
Telephone: (202) 384-7976
Manuel.Alvarez@cfpb.gov
Lawrence.Brown@cfpb.gov
Thomas.Ward@cfpb.gov

DAVID B. BARLOW, United States Attorney (# 13117)
JARED C. BENNETT, Assistant United States Attorney (#9097)
185 South State Street, Ste. 300
Salt Lake City, UT 84111
Telephone: (801) 524-5682
Jared.Bennett@usdoj.gov

Attorneys for Plaintiff
Consumer Financial Protection Bureau

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>Castle & Cooke Mortgage, LLC; Matthew A. Pineda, individually; and Buck L. Hawkins, individually,<br><br>　　　　Defendants. | Case No.  2:13CV684DAK<br><br>**COMPLAINT**<br><br>Honorable Dale A. Kimball |

　　　　The Consumer Financial Protection Bureau (the "Bureau") files this Complaint against

Defendants Castle & Cooke Mortgage, LLC (the "Company"), Matthew A. Pineda, and Buck L.

Hawkins (collectively, "Defendants") and alleges as follows:

## NATURE OF COMPLAINT

1. For years before the recent mortgage crisis, loan originators often steered consumers into mortgages with terms that were less favorable to the consumer but more profitable for the loan originator.

2. Seeking to stop this practice, in September 2010, the Federal Reserve Board amended Regulation Z to prohibit certain compensation schemes for loan originators (the "Compensation Rule"). The Compensation Rule, which became mandatory on April 6, 2011 ("Implementation Date"), prohibits any person from compensating a loan originator based on a term or condition of a mortgage loan. *See* 12 C.F.R. § 1026.36(d)(1)(i). A violation of the Compensation Rule is a violation of section 1036 of the Consumer Financial Protection Act of 2010 ("CFPA"). 12 U.S.C. § 5536(a)(1)(A).

3. Defendants have violated the Compensation Rule by paying the Company's loan officers quarterly bonuses in amounts based on terms or conditions of the loans they close, thus incentivizing loan officers to steer consumers into mortgages with less favorable terms, the very practice the Compensation Rule sought to prohibit.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action because it is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

5. Venue is proper here because Defendants transact business and reside in the Central Division of this District. 28 U.S.C. §§ 125(2), 1391(b); 12 U.S.C. § 5564(f).

**PLAINTIFF**

6. The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer-financial products or services under the Federal consumer financial laws. 12 U.S.C. § 5491(a). The Bureau's regulatory authority covers the extension of credit to consumers, which constitutes a consumer-financial product or service. 12 U.S.C. § 5481(5), (15)(A)(i).

7. The Bureau has independent litigating authority to commence civil actions to address violations of Federal consumer financial laws, including the Truth in Lending Act and Regulation Z. 12 U.S.C. § 5564(a)-(b).

**DEFENDANTS**

8. The Company is located, resides, and does business in the Central Division of this District. Since October 2005, the Company has offered and provided mortgage-loan products to consumers primarily for personal, family, or household purposes. The Company is therefore a "covered person." 12 U.S.C. § 5481(6), (15)(A)(i).

9. Matthew A. Pineda is the Company's president. At all times material to this Complaint, Pineda has had managerial responsibility for the Company and has materially participated in the conduct of its affairs. Pineda is therefore a "related person." 12 U.S.C. § 5481(25)(C)(i)-(ii).

10. Buck L. Hawkins is the senior vice president of the Company's capital markets division. At all times material to this Complaint, Hawkins has had managerial responsibility for the Company and has materially participated in the conduct of its affairs. Hawkins is therefore a "related person." 12 U.S.C. § 5481(25)(C)(i)-(ii).

## FACTUAL BACKGROUND

11. The Company is a mortgage bank that offers and provides loan products, including conventional fixed loans, adjustable-rate loans, Federal Housing Act loans, United States Department of Agriculture loans, and Veteran's Administration loans, to consumers seeking to purchase or refinance residential homes. Each of these loans is secured by the dwelling with respect to which the loan was provided.

12. In 2012 alone, the Company funded approximately $1.3 billion in mortgage loans.

13. The Company funds approximately 99% of the loans that it originates through one of two warehouse lines of credit.

14. The Company currently employs approximately 330 individuals in approximately 45 branches, each of which is managed by one or two loan officers, designated as branch managers, who report directly to Pineda.

15. Each branch employs loan officers who interact directly with borrowers. The Company pays its loan officers to assist borrowers with obtaining credit to be secured by a dwelling.

16. A loan officer takes an initial loan application, assesses the borrower's creditworthiness, and determines the interest rates available to the borrower for a given loan product.

17. Borrowers do not directly compensate the Company's loan officers for the loan-origination services they provide.

18. Before the Implementation Date, the Company paid its loan officers commissions that were based on the interest rates of the loans they offered to consumers—the higher the interest rates, the higher the loan officers' commissions.

19. Defendants knew as early as 2009 that the proposed Compensation Rule would prohibit the Company's then-existing commission structure.

20. Still wanting to pay officers the same levels of compensation after the Implementation Date, Defendants developed and implemented a scheme by which the Company would pay quarterly bonuses to loan officers in amounts that varied based on the interest rates of the loans they originated—the higher the interest rates of the loans closed by a loan officer during the quarter, the higher the loan officer's quarterly bonus.

21. Under the Company's quarterly bonus program, a loan officer can increase the amount of his or her quarterly bonus by offering consumers higher interest rates.

22. The Company does not refer to the quarterly bonus program in its written compensation agreements with its loan officers.

23. The Company does not refer to the quarterly bonus plan in any written policies.

24. Since the Implementation Date, Pineda and Hawkins have directed the Company to pay to the Company's loan officers quarterly bonuses that varied based on the interest rate of the loans they offered to borrowers.

25. At all times material to this Complaint, Hawkins and Pineda have exercised actual control over and have actively participated in the Company's quarterly bonus program.

26. Pineda sanctioned and decided to implement the Company's quarterly bonus program.

27. Using a formula that incentivizes loan officers to steer consumers into mortgages with less favorable terms, Hawkins calculates the amount of quarterly bonuses that the Company pays its loan officers, and Pineda authorizes the bonuses each quarter.

28. While the Company maintains payroll records of the quarterly bonus amounts paid to loan officers since the Implementation Date, at all times material to this Complaint, the Company has failed to maintain a written policy explaining the method Hawkins uses to calculate the amount of the loan officers' quarterly bonuses.

29. While the Company maintains employee agreements with each of its loan officers, at all times material to this Complaint, those employee agreements have failed to identify, explain, or refer to the existence of the Company's quarterly bonus program.

30. From July 8, 2011, through April 27, 2012, Defendants paid to loan officers more than 500 quarterly bonuses, in amounts that varied based on loan terms or conditions, totaling more than $4 million.

31. Since May 2012, Defendants have continued paying quarterly bonuses to loan officers in amounts that vary based on loan terms or conditions.

32. Since the Implementation Date, Defendants recklessly or knowingly paid quarterly bonuses based on loan terms or conditions, in violation of the Compensation Rule.

**COUNT I**
**(The Company's Violations of the Compensation Rule and the CFPA)**

33. The Bureau realleges and incorporates by reference paragraphs 1 – 32 of this Complaint.

34. The Compensation Rule provides that "[i]n connection with a consumer credit transaction secured by a dwelling, no loan originator shall receive and no person shall pay to a

loan originator, directly or indirectly, compensation in an amount that is based on any of the transaction's terms or conditions." 12 C.F.R. § 1026.36(d)(1)(i).

35. The Company is a person under the Compensation Rule. 12 C.F.R. § 1026.36(d)(1)(i).

36. Each of the Company's loan officers is a "loan originator" under the Compensation Rule. 12 C.F.R. § 1026.36(a)(1).

37. Since the Implementation Date, the Company has directly or indirectly paid its loan officers quarterly bonuses in an amount that is based on terms or conditions of consumer-credit transactions secured by a dwelling, in violation of 12 C.F.R. § 1026.36(d)(1)(i).

38. The Company has directly or indirectly paid in excess of 500 quarterly bonuses in amounts that varied based on the terms or conditions of consumer-credit transactions secured by a dwelling.

39. Each quarterly bonus payment made by the Company constitutes a discrete violation of the Compensation Rule, 12 C.F.R. § 1026.36(d)(1)(i), and the CFPA, 12 U.S.C. § 5536(a)(1)(A).

## COUNT II
**(Pineda's and Hawkins's Violations of the Compensation Rule and the CFPA)**

40. The Bureau realleges and incorporates by reference paragraphs 1 – 32 of this Complaint.

41. Because they are each a "related person," Pineda and Hawkins are each deemed a "covered person" for purposes of the CFPA. 12 U.S.C. § 5481(25). Pineda and Hawkins are liable for violations of the Compensation Rule and sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

## COUNT III
### (The Company's Violations of
### Regulation Z's Record-Retention Requirements and the CFPA)

42. The Bureau realleges and incorporates by reference paragraphs 1 – 32 of this Complaint.

43. Regulation Z requires a creditor to retain evidence of compliance with the Compensation Rule for 2 years. 12 C.F.R. § 1026.25(a). A creditor must therefore maintain records of the compensation it provided to a loan originator for a transaction as well as the compensation agreement in effect on the date the interest rate was set for the transaction.

44. While the Company maintains payroll records of the quarterly bonus amounts paid to loan officers since the Implementation Date, it does not record what portion of a loan officer's quarterly bonus is attributable to a given loan. Thus, since the Implementation Date, the Company has failed to maintain records of all compensation it provided its loan officers for a given transaction, in violation of 12 C.F.R. § 1026.25(a) and section 1036(a)(1)(A) of the CFPA, 12 U.S.C. § 5536(a)(1)(A).

45. While the Company maintains employee agreements with each of its loan officers, the agreements do not identify, explain, or refer to the existence of the Company's quarterly bonus program. Thus, since the Implementation Date, the Company has failed to maintain compensation agreements in effect on the date the interest rate was set for a transaction, in violation of 12 C.F.R. § 1026.25(a) and section 1036(a)(1)(A) of the CFPA, 12 U.S.C. § 5536(a)(1)(A).

46. Each quarterly bonus payment the Company has made to a loan officer without maintaining a complete or accurate compensation agreement with that loan officer constitutes a

discrete violation of 12 C.F.R. § 1026.25(a) and section 1036(a)(1)(A) of the CFPA, 12 U.S.C. § 5536(a)(1)(A).

## PRAYER FOR RELIEF

Wherefore, the Bureau requests that the Court:

a. permanently enjoin Defendants from committing future violations of the Compensation Rule, 12 C.F.R. pt. 1026;

b. order Defendants to pay restitution to consumers harmed by their unlawful conduct;

c. impose civil money penalties against Defendants;

d. order Defendants to pay the Bureau's costs incurred in connection with prosecuting this action; and

e. award additional relief as the Court may determine to be just and proper.

Dated: July 23, 2013

Respectfully Submitted,

KENT MARKUS
*Enforcement Director*

ANTHONY ALEXIS
*Deputy Enforcement Director for Field Litigation*

JEFFREY PAUL EHRLICH
*Assistant Litigation Deputy for Field Litigation*

MANUEL P. ALVAREZ
LAWRENCE BROWN
THOMAS WARD
*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone: 202-384-7976
Facsimile: 202-435-7722

e-mail: Manuel.Alvarez@cfpb.gov

DAVID B. BARLOW
United States Attorney

/s/ Jared C. Bennett
JARED C. BENNETT
Assistant United States Attorney