IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>       Plaintiff,<br><br>       v.<br><br>Castle & Cooke Mortgage, LLC; Matthew A. Pineda, individually; and Buck L. Hawkins, individually,<br><br>       Defendants. | Case No. 2:13CV684DAK<br><br>**STIPULATED FINAL JUDGMENT AND ORDER**<br><br>Hon. Dale A. Kimball |

      The Consumer Financial Protection Bureau (the "Bureau") commenced this civil action on July 23, 2013, to obtain injunctive relief, restitution, civil penalties, costs, and other relief from Castle & Cooke Mortgage, LLC (the "Company"), Matthew A. Pineda, and Buck L. Hawkins (collectively, "Defendants"). The Complaint alleges violations of the Loan Originator Compensation Rule, 12 C.F.R. § 1026.36(d)(1)(i) (the "Compensation Rule"), sections 1031(a) and 1036(a)(1)(A) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1)(A), and Regulation Z, 12 C.F.R. § 1026.25(a).

      The Parties agree to the entry of this Stipulated Final Judgment and Order (the "Order"). It is therefore ORDERED as follows:

**Findings of Fact and Conclusions of Law**

      1.      The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer-financial products or services under the Federal consumer-financial laws. 12 U.S.C. § 5491(a). The Bureau's regulatory authority covers the extension of credit to consumers, which constitutes a consumer-financial product or service. 12

U.S.C. § 5481(5), (15)(A)(i).

2.      The Company is located, resides, and does business in this District. Since October 2005, the Company has offered and provided mortgage-loan products to consumers, primarily for personal, family, or household purposes.

3.      Matthew A. Pineda is the Company's president. Pineda resides and does business in this District.

4.      Buck L. Hawkins is the senior vice-president of the Company's capital-markets division. Hawkins resides and does business in this District.

5.      This Court has subject-matter jurisdiction over this action because it is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

6.      Venue is proper here because Defendants transact business and reside in the Central Division of this District. 28 U.S.C. §§ 125(2), 1391(b); 12 U.S.C. § 5564(f).

7.      The Complaint states claims upon which relief can be granted for violations of the Compensation Rule, 12 C.F.R. § 1026.36(d)(1)(i), section 1036(a) of the CFPA, 12 U.S.C. § 5536(a)(1)(A), and Regulation Z, 12 C.F.R. § 1026.25(a).

8.      The Bureau and Defendants agree to entry of this Order, without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint to the date this Order is entered (the "Effective Date").

9.      Defendants have consented to entry of this Order without admitting or denying any of the allegations set forth in the Complaint, other than admitting the jurisdictional facts.

10.     The provisions of this Order shall be binding on Defendants, the Company's affiliates, and the Company's officers, agents, and employees, and any successors and assigns thereof.

11. Defendants have waived service under Rule 4(d) of the Federal Rules of Civil Procedure, and have waived all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also have waived any claim that they may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.

12. Entry of this Order is in the public interest.

## Definitions

13. "Impacted Consumer" shall mean any person (i) who obtained a closed-end mortgage loan for personal, family, or household use through a Loan Originator and (ii) whose Loan Originator received a quarterly bonus from the Company associated with such mortgage loan between April 6, 2011 and the Effective Date.

14. "Individual Defendants" shall mean, collectively, Matthew A. Pineda and Buck L. Hawkins.

15. "Loan Originator" shall mean an employee of the Company who arranged, negotiated, or otherwise obtained a closed-end mortgage loan for a consumer.

16. "Related Consumer Action" shall mean a private action by or on behalf of one or more consumers or an enforcement action by another governmental entity brought against any of the Defendants, or against any Loan Originator, by or on behalf of a consumer based on substantially the same facts alleged in the Complaint.

**Order**

**A.     Injunctive Relief**

17.     The Individual Defendants are permanently enjoined from paying compensation to a Loan Originator in violation of 12 C.F.R. § 1026.36(d) as it exists now or at any time after the Effective Date.

18.     The Company and its officers, agents, and employees, whether acting directly or indirectly, are permanently enjoined from paying compensation to a Loan Originator in violation of 12 C.F.R. § 1026.36(d) as it exists now or at any time after the Effective Date.

19.     The Company and its officers, agents, and employees, whether acting directly or indirectly, are permanently required to retain evidence of compliance with 12 C.F.R. § 1026.36(d) in accordance with 12 C.F.R. § 1026.25.

**B.     Redress**

20.     A judgment for equitable monetary redress is hereby entered in favor of the Bureau and against Defendants, jointly and severally, in the amount of $9,228,896.

21.     Within 3 days of the Effective Date, the Company shall pay to the Bureau, in the form of a wire transfer to the Bureau or to such agent as the Bureau may direct, and in accordance with wiring instructions to be provided by counsel for the Bureau, $9,228,896 in full satisfaction of the judgment as set forth in paragraph 20 of this section.

22.     Any funds received by the Bureau in satisfaction of this judgment shall be deposited into a fund or funds administered by the Bureau or its agent in accordance with applicable statutes and regulations to be used for redress for Impacted Consumers, including but not limited to refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

23.     If the Bureau determines, in its sole discretion, that redress to any Impacted

4

Consumer is wholly or partially impracticable, or if funds remain after redress is completed, the Bureau may apply any remaining funds for such other equitable relief (including consumer-information remedies) as the Bureau determines to be reasonably related to the violations alleged in the Complaint. Any funds not used for such equitable relief shall be deposited in the United States Treasury as disgorgement. Defendants shall have no right to challenge any actions that the Bureau or its representatives may take under this paragraph.

24. Redress provided by the Company shall not limit consumers' rights in any way.

**C.   Civil Money Penalty**

25. Based on the factors in section 1055(c)(3) of the CFPA, 12 U.S.C. § 5565(c)(3), a judgment for a civil money penalty is hereby entered in favor of the Bureau and against Defendants, jointly and severally, in the amount of $4,000,000.

26. Within 3 days of the Effective Date, the Company shall pay the civil money penalty in the form of a wire transfer to the Bureau or to such agent as the Bureau may direct, and in accordance with wiring instructions to be provided by counsel for the Bureau.

27. The civil money penalty paid under this Order shall be deposited in the Civil Penalty Fund of the Bureau in accordance with section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

28. Defendants shall treat the civil money penalty as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants shall not:

    a. claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any civil money penalty that the Company pays under this Order; or

    b. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to

any insurance policy, with regard to any civil money penalty that the Company pays under this Order.

**D.     Other Monetary Provisions**

29.     In the event of any default on Defendants' obligations to make any payment (including any redress payment) under this Order, interest, computed under 28 U.S.C. § 1961, as amended, shall accrue on any outstanding amounts not paid from the date of default to the date of payment, and shall immediately become due and payable.

30.     Defendants shall relinquish all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds shall be returned to Defendants.

31.     In accordance with 31 U.S.C. § 7701, Defendants shall furnish to the Bureau their social-security numbers or taxpayer-identification numbers, which shall be used for purposes of collecting and reporting on any delinquent amounts arising out of this Order.

32.     Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action of which the Company has actual knowledge, the Company shall notify the Bureau as described below in Section H (Notices) of the final judgment, consent order, or settlement in writing. That notification shall indicate the amount, if any, that Defendants or Loan Originators paid or are required to pay to consumers and describe the consumers or classes of consumers who will be paid, if any.

33.     The Individual Defendants agree that under section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), the Bureau may obtain from any consumer-reporting agency a consumer report concerning any of the Individual Defendants. The Bureau may use any such report to collect on and report any amount not paid as required by this Order.

34.     Each Party shall bear its own costs and fees arising from this matter.

**E.     Compliance Reporting**

35.     For 3 years from the Effective Date, the Company shall notify the Bureau as described below in Section H (Notices) of any change in the Company that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the proposed filing of any bankruptcy or insolvency proceeding by or against the Company; or a change in the Company's name or address.

36.     Within 7 days of the Effective Date, the Company shall designate at least one telephone number and an email, physical, and postal address as points of contact, which Bureau representatives may use to communicate with the Company.

37.     For 3 years from the Effective Date, the Company shall report: (a) any events identified in paragraph 35; or (b) any change in the information required to be submitted under paragraph 36 at least 30 days before such change; provided, however, that with respect to any proposed change about which the Company learns less than 30 days before the date such action is to take place, the Company shall notify the Bureau as soon as is practicable after obtaining such knowledge.

38.     For 3 years from the Effective Date, the Individual Defendants shall notify the Bureau of: (a) any change in name, including aliases or fictitious names; (b) any change in residence, postal address, email address, or telephone number; (c) any change in title or role in any business activity, including any business for which the Individual Defendants perform services, whether as an employee, officer, or otherwise, and any entity in which each of the Individual Defendants has any ownership interest, identifying for each its name, physical address, and Internet address; or (d) the filing of any bankruptcy petition or proceeding by or

7

against any Individual Defendant.

39. Within 7 days of the Effective Date, the Individual Defendants shall:

   a. identify a contact telephone number, a contact email address, and a contact home address;

   b. identify all titles and roles in all business activities, including any business for which each of the Individual Defendants performs services whether as an employee or otherwise and any entity in which each of the Individual Defendants has any ownership interest; and

   c. describe in detail each of the Individual Defendants' involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

40. For 3 years from the Effective Date, the Individual Defendants shall report: (a) any information required by paragraph 38 at least 30 days before such change; or (b) any change in the information required to be submitted under paragraph 39 at least 30 days before such change; provided, however, that with respect to any proposed change about which the Individual Defendants learn less than 30 days before the date such action is to take place, the Individual Defendants shall notify the Bureau as soon as is practicable after obtaining such knowledge.

**F.   Order Distribution and Acknowledgement**

41. Within 30 days of the Effective Date, the Company shall deliver a copy of this Order to each of its officers, agents, and employees. For 3 years from the Effective Date, the Company shall deliver a copy of this Order to any future officer, and to any future agent, employee, or other person who has responsibilities related to the subject matter of this Order.

42. Within 30 days of the Effective Date, the Company shall secure from all persons receiving a copy of this Order a signed and dated statement acknowledging receipt of a copy of

this Order, with any electronic signatures complying with the requirements of the E-Sign Act, 15 U.S.C. §§ 7001-06.

## G. Recordkeeping

43. For 3 years from the Effective Date, each Defendant shall create, retain, and make available to the Bureau upon request all records and documents necessary to demonstrate full compliance with each provision of this Order that applies to each of them, including, with respect to the Company, documents detailing all compensation paid to Loan Originators and how such compensation was calculated, and all other submissions to the Bureau.

## H. Notices

44. Unless otherwise directed in writing by a Bureau representative, all submissions, requests, communications, consents, or other documents relating to this Order shall be in writing and shall be sent by overnight courier (not the U.S. Postal Service), as follows:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington D.C. 20552
> RE: CFPB v. Castle & Cooke Mortgage, File No. 2012-0411-02

45. In lieu of overnight courier, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Bureau at Enforcement_Compliance@cfpb.gov. The caption of such email to which this electronic version is attached shall read: RE: CFPB v. Castle & Cooke Mortgage, File No. 2012-0411-02.

## I. Cooperation with Bureau Counsel

46. The Company shall provide the Bureau with the information required to determine how to apportion the equitable monetary redress among the Impacted Consumers. The

Company shall provide such information in its or its agents' possession, custody, or control to the Bureau within 14 days of receiving a written request from a Bureau representative.

47. In connection with this action, or any subsequent matter related to the conduct described in the Complaint, the Company shall cooperate in good faith with the Bureau and appear at such places and times as the Bureau shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the Bureau.

**J.     Compliance Monitoring**

48. For 3 years from the Effective Date, Defendants shall, within 14 days of receipt of a written request from the Bureau, submit additional compliance reports or other requested information, which shall be made under penalty of perjury, appear for depositions, and produce documents. In furtherance of this requirement, the Bureau is authorized to obtain discovery, without leave of court, using any of the procedures prescribed by the Federal Rules of Civil Procedure. For purposes of this paragraph, the Bureau is authorized to communicate directly with Defendants.

49. Nothing in this Order shall limit the Bureau's lawful use of compulsory process under 12 C.F.R. § 1080.6.

**K.     Compliance and Extensions of Time**

50. For good cause shown, the Bureau may, in its discretion, modify any non-material provisions of this Consent Order (e.g., reasonable extensions of time). Any such modification by the Bureau shall be in writing.

**L.     Retention of Jurisdiction**

51. The Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

IT IS SO ORDERED.

DATED this 12th day of November, 2013

*[signature: Dale A. Kimball]*

Hon. Dale A. Kimball
United States District Court Judge